1  RON BENDER (SBN 143364)
   GWENDOLEN D. LONG (CA admission pending)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone:  (310) 229-1234
4  Facsimile:  (310) 229-1244
5  Email:  rb@lnbyb.com, gdl@lnbyb.com

6  Proposed Attorneys for Chapter 11 Debtor
   And Debtor in Possession
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA
10
             (SAN FERNANDO VALLEY DIVISION)
11

12 In re                    ) Case No. 1:10-bk-23983-MT
                            )
13 KRYSTAL AIR, LLC,        ) Chapter 11
                            )
14              Debtor.     ) MOTION BY DEBTOR AND DEBTOR IN
                            ) POSSESSION  TO  OBTAIN  POST-
15                          ) PETITION  FINANCING  ON  AN
                            ) UNSECURED  BASIS  PURSUANT  TO
16                          ) BANKRUPTCY   CODE   SECTION
                            ) 364(b); MEMORANDUM OF POINTS
17                          ) AND  AUTHORITIES;  DECLARATION
                            ) OF EDWARD P. GRECH IN SUPPORT
18                          ) THEREOF
                            )
19                          )
                            ) Date:     November 29, 2010
20                          ) Time:     10:00 a.m.
                            ) Place:    Courtroom "302"
21                          )           21041 Burbank Blvd.
                            )           Woodland Hills, CA
22                          )
                            )
23                          )

24      Pursuant  to  Local  Bankruptcy  Rules  4001-2  and  9075-1,

25 Section 364(b) of title 11 of the United States Code, 11 U.S.C.

26 §§  101-1532  (as  amended,  the  "Bankruptcy Code")  and  Rules

27 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure,
28

                                1

Krystal Air, LLC, the Chapter 11 debtor and debtor in possession in the above-captioned case (the "Debtor"), hereby files this Motion (the "Motion") for authority to obtain post-petition unsecured financing pursuant to 11 U.S.C. § 364(b) on shortened notice.[1]

## I.   STATEMENT OF FACTS[2]

1.   The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on November 3, 2010 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.   The Debtor is a California limited liability company founded in 1998 and headquartered in Brea, California. The Debtor provides luxury charter jet services to corporate executives, entertainment personalities, and other travelers seeking first-class private transportation. The Debtor owns and operates a Gulfstream G-IV, Registration No. N914EG (the "Aircraft"), capable of transporting up to thirteen passengers and offering top-of-the-line amenities and conference space.

---

[1]  The Debtor filed its Ex Parte Application for Order Shortening Time on Notice for Hearing concurrently herewith.

[2]  Each of the facts set forth herein are supported by the annexed Declaration of Edward P. Grech.

3.    In March 2007, the Debtor purchased the Aircraft with financing provided by General Electric Capital Corporation (together with General Electric Capital Solutions, VFS Financing, Inc., and any after acquiring lender, including PNC Bank, N.A., collectively, "Lender"). In connection with such financing, the Debtor executed a promissory note in the face amount of $14,300,000 (the "Note") and an Aircraft Security Agreement granting the Lender a security interest in the Aircraft. The Note requires the Debtor to pay, on a quarterly basis, all accrued and outstanding interest plus $100,000 in principal reduction, which over the past year have amounted to approximately $316,000 per quarterly payment period (comprised of interest of approximately $216,000 and principal of $100,000), which breaks down to approximately $105,000 per month (comprised of interest of approximately $72,000 and principal of approximately $33,333).

4.    The primary reasons for the Debtor's Chapter 11 filing relates to the Lender's refusal to provide a short term modification of the payment terms of the Note while the Debtor finalized its negotiations for a new charter operating agreement, which the Debtor anticipates will be very lucrative, and to permit the Debtor to cure and reinstate its loan with the Lender. The Debtor has since finalized these negotiations for a new charter operating agreement and intends to begin operating

1  under the new charter agreement with Pegasus Elite Aviation,

2  Inc. ("PEA") effective December 1, 2010 (the "PEA Agreement").

3  After the effective date, the Federal Aviation Administration

4  (the "FAA") will need to authorize the Aircraft to fly under

5  PEA's aircraft operating certificate before the Debtor will be

6  able to resume its charter operations.[3]    The Debtor does not

7  

8  expect to have any problem obtaining such FAA approval, as the

9  Debtor has done so many times in the past.

10      5.    On November 5, 2010, the Debtor filed its Emergency

11  Motion for Entry of an Order Authorizing Debtor to Use Cash

12  Collateral on an Interim Basis Pending a Final Hearing [Docket

13  No. 4] (the "Cash Collateral Motion").    The operating budget

14  (the "Budget") attached as Exhibit "1" to the Declaration of

15  Edward P. Grech, annexed to the Cash Collateral Motion,

16  reflected anticipated expenditures of approximately $62,000 per

17  month.   However, given that the Aircraft will now be grounded

18  for a short period of time pending FAA approval of the PEA

19  Agreement, the Debtor anticipates that its monthly expenses will

20  be significantly less than that amount, roughly $35,000.

21  Attached as Exhibit "1" to the Declaration of Edward P. Grech

22  annexed hereto is a revised schedule of projected expenses for

23  the week ending January 28, 2011.

24  

25  

26  _____

27  [3] The Debtor has never held its own aircraft operating
    certificate. Instead, its practice has been to fly under the
28  aircraft operating certificate of its charter operator.

6.    The morning of November 10, 2010, the Lender filed its opposition to the Cash Collateral Motion [Docket No. 12] (the "Opposition"), objecting to the Debtor's use of cash collateral because of an alleged depreciation in the market value of the Aircraft.  In support of the Opposition, the Lender provided the Declaration of Kenneth M. Dufour [Docket No. 15] that claimed, without substantiation, that the Aircraft was worth $7,469,150 and would decline in market value at the absurd rate of $500,000 per quarter for the next two quarters.  The Lender's position makes no sense and is completely uncredible.  Using the Bank's purported post-petition decline in the value of the Aircraft, the Aircraft would decline at the rate of $2 million per year and would therefore be valueless in less than four years.  In reality, the life span of the Aircraft is approximately 20 more years.  This is reflected in the fact that the Lender and the Debtor agreed when the Note was entered into that it was appropriate for the Debtor to pay down the principal amount of the Note at the rate of approximately $33,000 per month or $100,000 per quarter.  The fact that the Aircraft may have decreased in value due to the struggling economy does not change the remaining life span of the Aircraft.  Since the Aircraft's fair market value went down pre-petition but its life span has remained the same, basic logic would dictate that any post-

petition decline in the value of the Aircraft would be less since the starting value is lower.

7.    On November 10, 2010, a hearing was held on the Cash Collateral Motion.    The Court ruled that the Debtor was authorized to use its cash collateral, provided that it made a payment of $105,000 to the Lender in advance of the next hearing on the Cash Collateral Motion to be held November 29, 2010.

8.    The present balance in the Debtor's operating account is approximately $1,400.    Therefore, in order for the Debtor to cover its operating expenses and make the payment to the Lender required for the Debtor to use the Lender's cash collateral, the Debtor would need to borrow approximately $210,000 over the next two months and therefore obtain post-petition financing in this amount.

9.    The Lender and the Debtor agree that the Lender is undersecured in that the outstanding indebtedness owing to the Lender is greater than the value of the Lender's collateral – the Aircraft.    As a result, the law is crystal clear under Section 506 of the Bankruptcy Code that the Lender is not entitled to accrue or be paid any post-petition interest.

10.    Given that the Debtor's post-petition operating expenses are now going to be nominal pending FAA approval of the PEA Agreement, the Debtor has determined that it is more financially reasonable to borrow the funds necessary to cover

the Debtor's operating expenses than to use the Lender's cash collateral.

11. As a result, the Debtor will simply withdraw its Cash Collateral Motion and for now not use any of the Lender's cash collateral. Instead, the Debtor's founder, Edward P. Grech ("Mr. Grech"), has agreed to make a personal loan to the Debtor in an amount not to exceed one hundred thousand dollars ($100,000) to be borrowed and repaid as needed in the ordinary course of the Debtor's business (the "Loan"). The loan will be provided by Mr. Grech to the Debtor on an unsecured basis and be allowed under 11 U.S.C. § 503(b)(1) as an administrative expense. For the avoidance of doubt, the Debtor does not intend to seek security or superpriority status for the Loan.

12. The Debtor has received $54,600.06 in charter revenue post-petition. Even though the Debtor does not believe the Lender has a security interest in its gross charter revenue, the Debtor intends to segregate these funds and any other charter revenue later received in a debtor-in-possession account, pending further order of this Court.[4]

13. The only funds expended by the Debtor post-petition went toward employee wages paid on November 12, 2010, in the aggregate amount of $6,962.59. However, these funds are directly

---

[4] The Debtor's JSSI maintenance insurance payment is scheduled to come out of its November charter revenue as required by the terms of the Note.

1  traceable to a loan Mr. Grech made to the Debtor in the amount

2  of $7,500 on November 2, 2010, the day before the Petition Date,

3  intended to cover this very payroll payment.    Therefore, the

4  Debtor contends it has not used any cash subject to, or even

5  arguably subject to, the Lender's security interest since the

6  Petition Date.    If that later proves not to be the case, Mr.

7  Grech will lend to the Debtor enough money to replace any such

8

9  cash collateral which the Debtor has used since the Petition

10  Date through the date of entry of an order granting this Motion.

11  **II.   The Court Has Authority to Approve the Post-Petition Loan**.

12      The Court may approve the post-petition financing requested

13  herein pursuant to Section 364(b) of the Bankruptcy Code and

14  Rule 4001(c) of the Federal Rules of Bankruptcy Procedure.

15  Section 364(b) provides that the Court may, after notice and a

16

17  hearing, grant authority to a trustee or debtor in possession to

18  obtain unsecured credit, allowable under Section 503(b)(1) of

19  the Bankruptcy Code as an administrative expense.

20      The Debtor does not believe that the Loan is outside the

21  ordinary course, as Mr. Grech has made personal loans to the

22  Debtor in the past, as reflected in the Debtor's schedules.

23  Thus, the relief requested should be available without notice

24  and a hearing under Section 364(a). However, out of an abundance

25  of caution, through this Motion the Debtor seeks Court approval

26  of the Loan under Section 364(b).

27

28

The Debtor's entire purpose in filing for Chapter 11 protection was to be afforded a momentary reprieve from its obligations under the Note to enable the Debtor to finalize and begin to operate under the PEA Agreement. Given that the Aircraft will be grounded for a short period of time, pending FAA approval of the Debtor's use of PEA's aircraft operating certificate, the Debtor anticipates that its actual, necessary expenses over the next couple of months will actually be substantially less than those listed in the Budget, roughly $35,000. Therefore, in light of the Court's order that the Debtor pay $105,000 to enable it to use cash collateral - funds that it would have to borrow from some source - it is in the best interest of the Debtor's estate not to use cash collateral and instead only borrow the amount required for its operating expenses.

The Debtor is fortunate to have a lender willing to extend credit on an unsecured basis. Mr. Grech is prepared to make a personal loan to the Debtor in an amount not to exceed one hundred thousand dollars ($100,000), to be borrowed and repaid in the ordinary course, provided that the Loan be allowed under 11 U.S.C. § 503(b)(1) as an administrative expense. The Debtor believes that the terms of the post-petition financing requested herein are far superior to any other terms it would be able to receive in the market and are otherwise fair and reasonable

1  under the circumstances of this case.

2      A significant dispute between the Debtor and the Lender
3  regarding the alleged post-petition decline in the market value
4  of the Aircraft.  The Lender recently filed a motion for relief
5  from stay, and the Court scheduled a preliminary hearing on that
6  motion for November 29, 2010, concurrently with the Debtor's
7  continued cash collateral hearing.  The Court made clear at the
8  initial cash collateral hearing that this initial hearing on the
9  Lender's relief from stay motion would simply serve as a
10 preliminary hearing and status conference on that motion.  The
11 Debtor sought to take the deposition and perform discovery on
12 the Lender's valuation witness, but counsel for the Lender made
13 clear that the Lender was not willing to produce its witness for
14 deposition in advance of the hearing on November 29, 2010.  The
15 Debtor also requires a short period of time to finalize its own
16 witness testimony.
17
18     As explained above, the Debtor submits that the Lender's
19 contention regarding post-petition decrease in the value of the
20 Aircraft is preposterous.  However, that issue will be dealt
21 with by the Court in the context of the Lender's relief from
22 stay motion now that the Debtor is no longer seeking to use any
23 of the Lender's cash collateral.  That will provide the parties
24 with a reasonable opportunity to conduct appropriate discovery.
25
26
27
28

1    The Debtor's reorganization strategy is based on an

2  increase in charter revenue from the PEA Agreement.  The Debtor

3  will benefit substantially from the increase in charter revenue

4  resulting from the PEA Agreement, and steadily rising revenue

5  thereafter as the economy begins to recover, bringing increased

6  demand for luxury services.  The Debtor will fund its cash flow

7  gap between now and the implementation of the PEA Agreement

8  through a post-petition unsecured loan from Mr. Grech.

9
    Based on the foregoing, and exercising its sound business

10 judgment, the Debtor believes that the Loan is necessary and

11 proper in this case and should be approved by the Court.

12

13

14                    **III. CONCLUSION**

15    **WHEREFORE**, the Debtor respectfully requests that the Court

16 enter an order:

17    (1) granting the Motion in its entirety, as set forth in

18 the proposed form of the order attached to the Grech Declaration

19 as Exhibit "2";

20
    (2) authorizing, but not obligating, the Debtor to obtain

21 post-petition unsecured financing from Mr. Grech in an amount

22 not to exceed one hundred thousand dollars ($100,000) to be

23 borrowed and repaid as needed;

24
    (3) allowing the Loan to be treated as an administrative

25 expense under 11 U.S.C. § 503(b)(1), pursuant to 11 U.S.C. §

26 354(b); and

27

28

1    (4) granting such other and further relief as the Court

2  deems just and proper.

3  Dated: November 22, 2010          KRYSTAL AIR, LLC

4

5                                    By: _/s/ Ron Bender_____

6                                        RON BENDER
                                         GWENDOLEN D. LONG
7                                        LEVENE, NEALE, BENDER, YOO
                                         & BRILL L.L.P.
8                                        Proposed Attorneys for
                                         Chapter 11 Debtor and Debtor
9                                        in Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF EDWARD P. GRECH

I, EDWARD P. GRECH, HEREBY DECLARE AS FOLLOWS:

1.    I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.    I am the founder and person in control of Krystal Air, LLC, a California limited liability company, the debtor and debtor-in-possession in the above-captioned Chapter 11 proceedings (the "Debtor"), and am responsible for overseeing the day-to-day financial operations and financial performance of the Debtor. Consequently, I am involved in supervising all material aspects of the Debtor's financial affairs.

3.    I make this Declaration in support of the Motion to which this Declaration is attached. Unless otherwise stated, all capitalized terms herein have the same meanings as in the Motion.

4.    The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on November 3, 2010 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession.

5.    The Debtor is a California limited liability company founded in 1998 and headquartered in Brea, California. The Debtor provides luxury charter jet services to corporate

1  executives, entertainment personalities, and other travelers

2  seeking first-class private transportation. The Debtor owns and

3  operates a Gulfstream G-IV, Registration No. N914EG (the

4  "Aircraft"), capable of transporting up to thirteen passengers

5  and offers top of the line amenities and conference space.

6

7      6.  In March 2007, the Debtor purchased the Aircraft with

8  financing provided by General Electric Capital Corporation

9  (together with General Electric Capital Solutions, VFS

10  Financing, Inc., and any after acquiring lender, including PNC

11  Bank, N.A., collectively, "Lender"). In connection with such

12  financing, the Debtor executed a promissory note in the face

13  amount of $14,300,000 (the "Note") and an Aircraft Security

14  Agreement granting the Lender a security interest in the

15  Aircraft. The Note requires the Debtor to pay, on a quarterly

16  basis, all accrued and outstanding interest plus $100,000 in

17  principal reduction, which over the past year have amounted to

18  approximately $316,000 per quarterly payment period (comprised

19  of interest of approximately $216,000 and principal of

20  $100,000), which breaks down to approximately $105,000 per month

21  (comprised of interest of approximately $72,000 and principal of

22  approximately $33,333).

23      7.  The primary reasons for the Debtor's Chapter 11 filing

24  relates to the Lender's refusal to provide a short term

25  modification of the payment terms of the Note while the Debtor

finalized its negotiations for a new charter operating agreement, which the Debtor anticipates will be very lucrative, and to permit the Debtor to cure and reinstate its loan with the Lender. The Debtor has since finalized these negotiations for a new charter operating agreement and intends to begin operating under the new charter agreement with Pegasus Elite Aviation, Inc. ("PEA") effective December 1, 2010 (the "PEA Agreement").

8.    In connection with the Debtor's motion for use of cash collateral, I attached a copy of the then projected operating budget as Exhibit "1" to my declaration, reflecting anticipated expenditures of approximately $62,000 per month.

9.    However, given that the Federal Aviation Administration (the "FAA") will need to authorize the Aircraft to fly under PEA's aircraft operating certificate before the Debtor will be able to resume its charter operation, the anticipated operating expenses during that time have changed. Attached hereto as Exhibit "1" is a revised schedule of projected expenses for the week ending January 28, 2011. The Debtor has never held its own aircraft operating certificate. Instead, our practice has been to fly under the aircraft operating certificate of the Debtor's charter operator. I do not expect the Debtor to have any problem obtaining such FAA approval, as the Debtor has done so many times in the past.

10. I understand that the Court has ordered that the Debtor must pay the Lender $105,000 to enable the Debtor to use the its cash collateral. Given that the Debtor's operating account balance is approximately $1,400, in order for the Debtor to cover its operating expenses and make the payment to the Lender required for the Debtor to use the Lender's cash collateral, the Debtor would need to borrow approximately $210,000 over the next two months and therefore obtain post-petition financing in this amount. I have determined that it is more financially reasonable for the Debtor to borrow the funds necessary to cover its operating expenses than to use the Lender's cash collateral.

11. I am prepared to make a personal loan to the Debtor in an amount not to exceed one hundred thousand dollars ($100,000) to be borrowed and repaid as needed in the ordinary course of the Debtor's business (the "Loan"), provided that the Loan be allowed under 11 U.S.C. § 503(b)(1) as an administrative expense.

12. The Debtor has received $54,600.06 in charter revenue post-petition. Even though I do not believe the Lender has a security interest in the Debtor's gross charter revenue, I intend to segregate these funds and any other charter revenue later received in a debtor-in-possession account, pending further order of this Court.

13. The only funds expended by the Debtor post-petition went toward employee wages paid on November 12, 2010, in the aggregate amount of $6,962.59. However, these funds are directly traceable to a loan I made to the Debtor in the amount of $7,500 on November 2, 2010, which was intended to cover that very payroll payment. Therefore, I do not believe the Debtor has used any cash subject to the Lender's security interest since the Petition Date. However, if that later proves not to be the case, I will lend to the Debtor enough money to replace any such cash collateral which the Debtor has used since the Petition Date.

14. I believe that the terms of the post-petition financing I am offering are far superior to any other terms the Debtor would be able to receive in the market and are otherwise fair and reasonable under the circumstances of this case.

15. I recognize that there is a significant dispute between the Debtor and the Lender regarding the alleged depreciation in the market value of the Aircraft. The Lender's position that the Aircraft would decline at the rate of $2 million per year and would therefore be valueless in less than four years makes no sense and is completely uncredible. In reality, the life span of the Aircraft is approximately 20 more years. This is what the Lender and I understood when the Debtor entered into the Note as reflected in its terms, whereby the Debtor would pay down the principal amount of the Note at the

rate of approximately $33,000 per month or $100,000 per quarter. The fact that the Aircraft may have decreased in value due to the struggling economy does not change the remaining life span of the Aircraft. In fact, I believe the post-petition decline in the value of the Aircraft is less given the starting value is lower.

16. However, if the Debtor were prevented from receiving this Loan I do not believe the Debtor would have a meaningful chance of reorganization.

17. My reorganization strategy for the Debtor is based on an increase in charter revenue from the PEA Agreement, and the cure and reinstatement of the Note. I anticipate there will be a substantial increase charter revenue resulting from the PEA Agreement, and steadily rising revenue thereafter as the economy begins to recover bringing increased demand for luxury services. I will fund the Debtor's cash flow gap between now and the implementation of the PEA Agreement through the post-petition unsecured Loan requested in the Motion.

18. Based on the foregoing, and exercising my sound business judgment, I believe that the Loan is necessary and proper in this case.

19. A proposed form of the order granting the Motion is attached as Exhibit "2" hereto.

1    I declare and verify under penalty of perjury that the

2 foregoing is true and correct to the best of my knowledge,

3 information and belief.

4    Executed on this 22nd day of November, 2010, at Brea,

5 California.

6

7

8                          /s/ Edward P. Grech

9                          EDWARD P. GRECH, Declarant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"



**KRYSTAL AIR, LLC WEEKLY BUDGET THROUGH JANUARY 2011 (Plane Grounded)**

| Week Ending: | Date: | Description: | Revenues & Reimbursemts | Prefunded Payables | | Balance: |
|---|---|---|---|---|---|---|
| | 3-Nov-2010 | Balance Forward | | | $ | 8,342.00 |
| 5-Nov-2010 | | | | | $ | 8,342.00 |
| | 12-Nov-2010 | Payroll | | $ (6,962.59) X | | |
| 12-Nov-2010 | | | | | | |
| 19-Nov-2010 | | | | | | |
| | **22-Nov-2010** | **October Check from Jet Edge** | $ 54,600.06 | | | |
| | 26-Nov-2010 | Payroll | | $ (14,000.00) | | |
| 26-Nov-2010 | | | | | | |
| | 29-Nov-2010 | Payroll | | $ (1,350.00) | | |
| | 29-Nov-2010 | Telephones | | $ (1,539.31) | | |
| | 29-Nov-2010 | Workers Comp Insurance | | $ (437.43) | | |
| 3-Dec-2010 | | | | | | |
| | 10-Dec-2010 | Payroll | | $ (7,200.00) | | |
| 10-Dec-2010 | | | | | | |
| 17-Dec-2010 | | | | | | |
| | **20-Dec-2010** | **November Check from Jet Edge** | $ 75,000.00 | | | |
| | 20-Dec-2010 | Jet Edge Reimbursements | $ (10,000.00) | | | |
| | 24-Dec-2010 | Maint Insurance (JSSI Nov) | $ (16,200.00) | | | |
| | 24-Dec-2010 | Payroll | | $ (14,000.00) | | |
| | 24-Dec-2010 | Western Jet | | $ (5,000.00) | | |

| 24-Dec-2010 | | | | |
|---|---|---|---|---|
| | 27-Dec-2010 | Payroll | $ | (1,350.00) |
| | 27-Dec-2010 | Telephones | $ | (300.00) |
| | 27-Dec-2010 | Workers Comp Insurance | $ | (437.43) |
| **31-Dec-2010** | | | | |
| | 7-Jan-2011 | Payroll | $ | (7,200.00) |
| **7-Jan-2011** | | | | |
| **14-Jan-2011** | | | | |
| | 21-Jan-2011 | Payroll | $ | (14,000.00) |
| **21-Jan-2011** | | | | |
| | 28-Jan-2011 | Payroll | $ | (1,350.00) |
| | 28-Jan-2011 | Telephones | $ | (300.00) |
| | 28-Jan-2011 | Workers Comp Insurance | $ | (437.43) |
| **28-Jan-2011** | | | | |
| | | **TOTALS:** $ | 103,400.06 | $ (67,522.19) |

**EXHIBIT "2"**

1  RON BENDER (SBN 143364)
   GWENDOLEN D. LONG (CA admission pending)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone:  (310) 229-1234
4  Facsimile:  (310) 229-1244
5  Email:  rb@lnbyb.com, img@lnbyb.com, gdl@lnbyb.com

6  Proposed Attorneys for Chapter 11 Debtor
   And Debtor in Possession
7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                   (SAN FERNANDO VALLEY DIVISION)

11

12

13

    In re:                          ) Case No.
14                                   )
    KRYSTAL AIR, LLC,                ) Chapter 11
15                                   )
              Debtor.               ) ORDER  GRANTING  MOTION  BY
16                                   ) DEBTOR   AND   DEBTOR   IN
                                     ) POSSESSION  TO  OBTAIN  POST-
17                                   ) PETITION  FINANCING  ON  AN
                                     ) UNSECURED  BASIS  PURSUANT  TO
18                                   ) BANKRUPTCY CODE SECTION 364(b)
                                     )
19                                   )
                                     )
20                                   )
21

22       A hearing was held on November 29, 2010, at 10:00 a.m.,

23  before the Honorable Maureen A. Tighe, United States Bankruptcy

24  Judge for the Central District of California, in Courtroom

25  "302", located at 21041 Burbank Blvd., Woodland Hills,

26  California, for the Court to consider the motion (the "Motion")

27  filed by Krystal Air, LLC (the "Debtor"), the Chapter 11 debtor

28

1    and debtor in possession in the above-captioned case, to obtain

2    post-petition financing on an unsecured basis pursuant to 11

3    U.S.C. § 354(b) (the "Motion").    Appearances were made as set

4    forth on the record of the Court.

5        This Court, having considered the Motion, any oppositions

6    filed, the statements and representations of parties made at the

7    hearing on the Motion, proper notice of the Motion having been

8    provided, and good cause appearing therefore,

9        IT IS HEREBY ORDERED AS FOLLOWS:

10       (1)  the Motion is granted in its entirety;

11       (2)  the Debtor is authorized, but not obligated, to obtain

12   post-petition unsecured financing from its founder, Edward P.

13   Grech, in an amount not to exceed one hundred thousand dollars

14   ($100,000) to be borrowed and repaid as needed without interest

15   to be repaid by the Debtor when the Debtor has money available

16   to it at the Debtor's discretion; and

17       (3)  the Loan is allowed under 11 U.S.C. § 503(b)(1) as an

18   administrative expense pursuant to 11 U.S.C. § 354(b).

19

20   IT IS SO ORDERED.

21

22                               ###

23

24

25

26

27

28

| In re:<br><br>　　　KRYSTAL AIR, LLC,<br><br>　　　　　　　　　　　　　　　　Debtor(s). | CHAPTER 11<br><br>CASE NO 1:10-bk-23983-MT |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Ste. 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **MOTION BY DEBTOR AND DEBTOR IN POSSESSION TO OBTAIN POST-PETITION FINANCING ON AN UNSECURED BASIS PURSUANT TO BANKRUPTCY CODE SECTION 364(b); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF EDWARD P. GRECH IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 22, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Katherine Bunker     kate.bunker@usdoj.gov
- Eric H Geffner     egeffner@lsl-la.com
- Leo D Plotkin     lplotkin@lsl-la.com, dsmall@lsl-la.com
- Thomas E Shuck     malvarado@pmcos.com
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On **November 22, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 22, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

***Served by Personal Delivery via Attorney Service***
Hon. Maureen A. Tighe
United States Bankruptcy Court
Courtroom 302
21041 Burbank Boulevard
Woodland Hills, CA 91367

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 22, 2010 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1

1 | II. **SERVED BY U.S. MAIL**

2

Krystal Air, LLC
2701 E. Imperial Highway
Brea, CA 92821

U.S. Trustee
21051 Warner Center Lane
Suite 115
Woodland Hills, CA 91367

GE Capital
PO Box 64387
Pittsburgh, PA 15264-3897

Western Jet Aviation
16101 Saticoy Street, 901 Hangar
Van Nuys, CA 91406

Verizon Wireless
15505 Sand Canyon Ave
Irvine, CA 92618

Universal Weather & Aviation, Inc.
8787 Tallyho
Houston, TX 77061
creditgroup@univ-wea.com

T-Mobile
12920 SE 38th St
Bellevue, WA 98006

Solomon, Winnett & Rosenfield
11777 San Vicente Blvd., #777
Los Angeles, CA 90049

Sentinent Flight Group, LLC
295 McLaws Circle, Suite One
Williamsburg, VA 23185

McDermott, Will & Emery
2049 Century Park East
Los Angeles, CA

Lovitt & Touche
7202 E. Rosewood, #200
Tucson, AZ 85710

L.A. County Tax Collector
225 N. Hill Street, #122
Los Angeles, CA 90012

JSSI
180 N. Stetson, Suite 29
Chicago, IL 60601

Jet Edge
16135 Cohasset Street
Van Nuys, CA 91406

Jeppeson
55 Inverness Drive East
Englewood, CO 80112

Honeywell
21111 N. 19th Avenue
Phoenix, AZ 85027

Gulfstream
500 Gulfstream Road
Savannah, GA 31407

Fred Muller, Esq.
15915 Ventura Blvd. #203
Encino, CA 91436

Frandzel, Robins, Bloom & Csato
6500 Wilshire Blvd # 1700
Los Angeles, CA 90048

Epic Aviation, LLC
295 McLaws Circle, Suite One
Williamsburg, VA 23185

Edward Grech
2701 E. Imperial Highway
Brea, CA 92821

Corporate Air Parts, Inc.
7641 Densmore Avenue
Van Nuys, CA 91406

Banyan Air Services, Inc.
5360 NW 20th Terrace
Ft. Lauderdale, FL 33309

B of A Business Card
P.O. Box 15184
Wilmington, DE 19850

Aircell Bus. Aviation Services, LLC
Department 1371
Denver, CO 80256

Aerlex Law Group
2800 28th St # 200
Santa Monica, CA 90405

Levy, Small & Lallas
*Counsel to GE Capital*
815 Moraga Drive
Los Angeles, CA 90049
Attn: Leo D. Plotkin, Esq.

Parker, Milliken, Clark, O'Hara &
Samuelian
Counsel to *Wells Fargo Equip. Finance*
555 S. Flower St., 30th Fl.
Los Angeles, CA 90071-2440

Michel F Mills
2701 E Imperial Highway
Brea, CA 92821

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28