1 | RON BENDER (SBN 143364)
BETH ANN R. YOUNG (SBN 143945)
2 | GWENDOLEN D. LONG (CA admission pending)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3 | 10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
4 | Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
5 | Email:  rb@lnbyb.com, gdl@lnbyb.com
6 |
Attorneys for Chapter 11 Debtor
7 | And Debtor in Possession
8 |
9 |              UNITED STATES BANKRUPTCY COURT
10 |             CENTRAL DISTRICT OF CALIFORNIA
11 |              (SAN FERNANDO VALLEY DIVISION)

| | |
|---|---|
| In re: | ) Case No. 1:10-bk-23983-MT |
| | ) |
| KRYSTAL AIR, LLC, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) **DEBTOR'S NOTICE OF MOTION AND** |
| | ) **MOTION TO APPROVE STIPULATION** |
| | ) **AND SETTLEMENT; MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES; AND** |
| | ) **DECLARATION OF EDWARD P. GRECH** |
| | ) **IN SUPPORT THEREOF** |
| | ) |
| | ) Date:     May 2, 2011 |
| | ) Time:     10:00 a.m. |
| | ) Place:    Courtroom "302" |
| | )               21041 Burbank Blvd. |
| | )               Woodland Hills, CA |
| | ) |
| | ) |
| | ) |
| | ) |

TO THE HONORABLE MAUREEN TIGHE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL CREDITORS AND ALL PARTIES WHO HAVE FILED A REQUEST FOR SPECIAL NOTICE:

1

1   **PLEASE TAKE NOTICE** that Krystal Air, LLC, the Chapter 11
2   debtor and debtor in possession in the above-captioned case (the
3   "Debtor"), hereby moves (the "Motion") the Court for an order
4   approving the settlement agreement entered into among and
5   between the Debtor, on the one hand, and General Electric
6   Capital Corporation, General Electric Capital Solutions, VFS
7   Financing, Inc., and any after acquiring lender, including PNC
8   Bank, N.A. (collectively, the "Lender"), on the other hand, on
9   the terms and conditions set forth in the "Settlement Agreement"
10  dated as of April 26, 2011 (the "Settlement Agreement"), a true
11  and correct copy of which is attached as Exhibit "1" to the
12  annexed Declaration of Edward P. Grech (the "Grech
13  Declaration"). As set forth in the accompanying Memorandum of
14  Points and Authorities and the Grech Declaration, the proposed
15  settlement was negotiated in good faith, and is reasonable,
16  fair, equitable and in the best interests of the Debtor and its
17  estate.

18

19  **PLEASE TAKE FURTHER NOTICE THAT** this Motion is based upon
20  this Notice of Motion and Motion, the annexed Memorandum of
21  Points and Authorities, the Grech Declaration, the record in
22  this case and all evidence properly submitted to the Court in
23  connection with the Motion.

24

25  **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local
26  Bankruptcy Rule 9075-1(b), on April 26, 2011, a copy of the
27  Motion, together with all papers filed in support thereof, were
28  served, via overnight mail (for receipt on Wednesday, April 27,

1  2011), upon the Office of the United States Trustee, the

2  Debtor's secured creditors and their counsel (if known), the

3  Debtor's twenty largest unsecured creditors, and parties

4  requesting special notice. This Notice of the hearing on the

5  Motion was also served on April 26, 2011, via electronic mail

6  and/or overnight mail, upon the foregoing parties.

7

8  **PLEASE TAKE FURTHER NOTICE** that any party wishing to obtain

9  additional copies of the Motion should contact counsel for the

10  Debtor at the address set forth in the upper left-hand corner of

11  this Notice.

12

13  **PLEASE TAKE FURTHER NOTICE** that any party wishing to object

14  or be heard with respect to the Motion must file such opposition

15  or statement so that it is actually received by not later than

16  12:00am (midnight) on April 29, 2011 or otherwise appear at the

17  hearing.

18

19  **WHEREFORE,** Debtor respectfully requests that this Court

20  enter an Order pursuant to Federal Rule of Bankruptcy Procedure

21  9019 (a):

22      1.    Granting the Motion in its entirety;

23      2.    Approving the Settlement Agreement;

24      3.    Authorizing the Debtor to take any and all actions

25  necessary to consummate the Settlement Agreement; and

26  //

27  //

28  //

3

1    4.   Granting such other and further relief as the Court

2  deems just and proper.

3

Dated: April 26, 2011           KRYSTAL AIR, LLC

4

5

                              By: _/s/ Ron Bender_____

6                                   RON BENDER
                                    GWENDOLEN D. LONG
7                                   LEVENE, NEALE, BENDER, YOO
                                    & BRILL L.L.P.
8                                   Attorneys for Chapter 11
                                    Debtor and Debtor in
9                                   Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1

2                       **MEMORANDUM OF POINTS AND AUTHORITIES**

3                                        **I.**

4                              **SUMMARY OF ARGUMENT**

5          After more than four months of protracted litigation and

6   discovery relating to multiple contested matters between Krystal

7   Air, LLC, the Chapter 11 debtor and debtor in possession in the

8   above-captioned case (the "Debtor") and General Electric Capital

9   Corporation, General Electric Capital Solutions, VFS Financing,

10  Inc., and any after acquiring lender, including PNC Bank, N.A.

11  (collectively, the "Lender"), the parties finally came together

12  with a settlement agreement which effectively resolves all of

13  the disputes, puts an end to multiple lawsuits and adversary

14  proceedings and enables dismissal of the Bankruptcy Case.

15  Accordingly, pursuant to Section 105(a) of the Bankruptcy Code,

16  Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, and

17  Local Bankruptcy Rules 2081-1(a)(12) and 9075-1, Debtor hereby

18  moves (the "Motion") for entry of an order approving the

19  "Settlement Agreement" between the Debtor, on the one hand, and

20  the Lender on the other hand. As indicate below and as supported

21  by the Declaration of Ed Grech filed concurrently herewith, each

22  of the factors typically considered by the Court in assessing

23  the terms of a settlement indicate that the settlement reached

24  here was negotiated in good faith and is reasonable, fair, and

25  equitable.

26

27

28

5

## II.

### STATEMENT OF FACTS

**A.   BACKGROUND.**

The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on November 3, 2010. The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a California limited liability company founded in 1998 and headquartered in Brea, California. The Debtor provides luxury charter jet services to corporate executives, entertainment personalities and other travelers seeking first-class private transportation. The Debtor owns and operates a Gulfstream G-IV, Registration No. N914EG (the "Aircraft"), capable of transporting up to thirteen passengers and offers top-of-the-line amenities and conference space. In March, 2007, the Debtor purchased the Aircraft with financing provided by the Lender. In connection with such financing, the Debtor executed a promissory note in the face amount of $14,300,000 (the "Secured Note") and an Aircraft Security Agreement granting the Lender a security interest in the Aircraft.

A dispute regarding the repayment of the Secured Note eventually led to the Debtor filing for protection under Chapter 11 of the Bankruptcy Code in order to continue operating the Aircraft in an effective and cost-efficient manner, to preserve and maximize the value of the Aircraft for the benefit of all

1  creditors, and to confirm a plan of reorganization and
2  successfully emerge from bankruptcy. Post-petition, the Debtor
3  and the Lender were involved in multiple contested matters
4  relating to the value of the aircraft, relief from the automatic
5  stay, and litigation involving the Guarantor of the
6  indebtedness.

7  **B.    The Status of the Litigation Between the Lender, the Debtor**
8       **and Its Guarantors.**

9       The Lender's Motion for Relief from Stay.

10      On or about November 18, 2010, the Lender filed its Motion
11  for Relief from Stay [Docket No. 33] (the "RFS Motion"). At a
12  preliminary hearing held on November 29, 2010, the Court, among
13  other things, scheduled an evidentiary hearing on the RFS Motion
14  to be held on December 20, 2010 (the "Relief from Stay
15  Hearing"). The Relief from Stay Hearing was later continued with
16  an accompanying extension of the respective briefing schedule by
17  stipulation of both parties, which was approved by the Court on
18  December 13, 2010 [Docket No. 66].

19      In accordance with the briefing schedule stipulated by the
20  parties, on or about January 17, 2011, the Debtor filed its
21  opposition to the RFS Motion (the "Opposition").

22  Through several subsequent stipulations, the parties agreed to
23  extend the deadline for the Lender's reply to the Opposition
24  (the "Reply") and continue the Relief from Stay Hearing. In
25  accordance therewith, the Lender filed its Reply on February 9,
26  2011 and the Relief from Stay Hearing is presently scheduled for
27  May 2, 2011 at 10:00 a.m.

28

7

1          The Debtor's Adversary Proceeding Against the Lender.

2          On November 19, 2010, the Debtor, along with its founder,
3    Mr. Grech, and its affiliate, Krystal Koach, Inc., filed an
4    adversary proceeding in connection with the Debtor's Chapter 11
5    case and given case number 1:10-ap-01503-MT (the "Adversary
6    Proceeding") against the Lender, seeking, among other things,
7    rescission of the Secured Note (the "Complaint").

8          In the Adversary Proceeding, the Lender parties are
9    represented by separate counsel, with PNC Bank, N.A. and PNC
10   Equipment Finance LLC (together, "PNC"), on the one hand, and
11   General Electric Capital Corp., General Electric Capital
12   Solutions, GE Commercial Finance and VFS Financing Inc.
13   (together, "GE"), on the other hand.

14         On January 21, 2011, both PNC and GE filed separate motions
15   to dismiss the Adversary Proceeding.

16         Due to the ongoing negotiations between the parties,
17   several stipulations have been filed in the Adversary Proceeding
18   continuing the status conference and hearings on the motions to
19   dismiss, which are presently scheduled to be heard on May 18,
20   2011 at 1:30 p.m.

21         The Lender's District Court Action Against the Guarantor of
22         the Secured Note.

23         On or about January 4, 2011, VFS Financing Inc. filed its
24   Complaint for Breach of a Written Guaranty in the United States
25   District Court for the Central District of California, in a case
26   styled VFS Financing, Inc. v. Edward P. Grech (Case No. SACV11-
27   0011DOC (MLGx) (the "District Court Action").

28

                                    8

1     Due to the ongoing negotiations between the parties, VFS

2 Financing and Mr. Grech have agreed to extend the due date for a

3 responsive pleading in the District Court Action to May 11,

4 2011.

5 **C.   The Proposed Compromise.**

6     In order to resolve the various, ongoing disputes between

7 the Debtor, the Lender and the guarantors of the Secured Note,

8 as well as the Lender's RFS Motion the parties have entered into

9 the proposed Settlement Agreement (the "Settlement Agreement"),

10 a true and correct copy of which is attached to the Grech

11 Declaration as Exhibit "1."

12     The terms of the compromise set forth in the Settlement

13 Agreement can be summarized as follows:[1]

14     a.   Within 48 hours of the execution of the

15     Settlement Agreement, the Debtor shall make an up-front

16     payment of $695,000 (which, along with the adequate

17     protection payment of $105,000 delivered to Lender on

18     February 15, 2011 is deemed the "First Up-front Payment").

19     b.   On or before May 4, 2011, the Debtor shall make a

20     second up-front payment of $1.7 million (the "Second Up-

21     Front Payment").

22     c.   On or before July 31, 2011, the Debtor shall

23     cause to be transferred an additional $9.5 million to the

24     Lender (the "Release Payment").

25

26

27 [1]   This summary is for informational purposes only.  To the extent there is
any disagreement between this summary and the actual terms of the

28   Settlement Agreement, the terms of the Settlement Agreement shall control.

1          d.    On each of April 30, 2011, May 31, 2011, June 30,

2     2011, and July 31, 2011, the Debtor shall pay to the Lender

3     the sum of $50,000 as adequate protection payments, unless

4     the sale of the aircraft closes prior to the date of any of

5     these  scheduled  payments,  in  which  case,  no  further

6     adequate protection payments are required.

7          e.    Upon receipt of the Up-front Payment and Release

8     Payment, the Lender will fully release the Debtor and all

9     guarantors of the Secured Note, fully release all liens

10    against the Aircraft and any other assets owned by the

11    Debtor or the guarantors of the Secured Note and dismiss

12    the District Court Action.

13         f.    In exchange, the Debtor will voluntarily dismiss

14    the  Adversary  Proceeding  against  the  Lender  and  fully

15    release the Lender for any and all causes of action arising

16    out of the Secured Note.

17                              **III.**

18                         **LEGAL STANDARD**

19    Bankruptcy Rule 9019(a) provides that:

20              On motion by the [debtor in possession] and
              after  notice  and  hearing,  the  court  may
21              approve a compromise or settlement.  Notice
              shall  be  given  to  creditors,  the  United
22              States  trustee,  the  debtor  and  indenture
              trustees  as  provided  in  [Bankruptcy  Rule]
23              2002  and  to  any  other  entity  as  the  court
              may direct.
24

25    Fed.R.Bankr.P. 9019(a).

26         The  Court  of  Appeals  for  the  Ninth  Circuit  has  long

27    recognized that "[t]he bankruptcy court has great latitude in

28    approving  compromise  agreements."    Woodson  v.  Fireman's  Fund

                              10

1   Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).

2   "The purpose of a compromise agreement is to allow the [debtor

3   in possession] and the creditors to avoid the expenses and

4   burdens associated with litigating sharply contested and dubious

5   claims."    Martin v. Kane (In re A & C Properties), 784 F.2d

6   1377, 1380-81 (9th Cir. 1986). Accordingly, in approving a

7   compromise, the Court need not conduct an exhaustive

8   investigation of the claims sought to be compromised.    See

9   United States v. Alaska National Bank (In re Walsh Constr.,

10  Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).    Rather, it is

11  sufficient that the Court find that the compromise was

12  negotiated in good faith and is reasonable, fair, and equitable.

13  See In re A & C Properties, supra, 784 F.2d at 1381.

14      The Court of Appeals for the Ninth Circuit has identified

15  the following factors for consideration in determining whether a

16  proposed compromise agreement is reasonable, fair, and

17  equitable:

18          (a)  the probability of success in the
                 litigation;
19
            (b)  the difficulties, if any, to be
20               encountered in the matter of
                 collection;
21
            (c)  the complexity of the litigation
22               involved, and the expense,
                 inconvenience, and delay necessarily
23               attending it; and

24          (d)  the paramount interest of the creditors
                 and a proper deference to their
25               reasonable views in the premises.

26
    In re A & C Properties, supra, 784 F.2d at 1381 (the "A & C
27
    Factors").
28

11

1    Consideration of these factors does not require the Court

2  to determine whether a compromise presented is the best one that

3  could possibly have been achieved.    Rather, the Court need only

4  canvass the issues to determine whether the compromise falls

5  "below the <u>lowest point in the zone of reasonableness</u>."    <u>Newman</u>

6  <u>v. Stein</u>, 464 F.2d 689, 698 (2d Cir. 1972) (emphasis added),

7  <u>cert. denied sub nom.</u> Benson v. Newman, 409 U.S. 1039 (1972);

8  <u>see also</u> <u>Anaconda-Ericsson Inc. v. Hessen (In re Teltronics</u>

9  <u>Services, Inc.)</u>, 762 F.2d 185, 189 (2d Cir. 1985); <u>Cosoff v.</u>

10  <u>Rodman (In re W.T. Grant Co.)</u>, 699 F.2d 599, 608 (2d Cir. 1983),

11  <u>cert. denied</u> 464 U.S. 822 (1983).    Finally, although the Court

12  should give deference to the reasonable views of creditors,

13  "objections do not rule. It is well established that compromises

14  are favored in bankruptcy." <u>In re Lee Way Holding Co.</u>, 120 B.R.

15  881, 891 (Bankr. S.D. Ohio 1990).

16                                 **IV.**

17                            **DISCUSSION.**

18    The Debtor submits that the settlement among and between

19  the Parties comports with the <u>A & C Properties</u> standards set

20  forth above and is in the best interests of the bankruptcy

21  estate and all of its creditors.    The four factors, pursuant to

22  <u>A & C Properties</u>, to be considered in reaching the

23  aforementioned conclusion, are as follows:

24  **A.    The Probability of Success in the Litigation.**

25    While the Debtor believes that it would ultimately

26  successfully defend against the Lender's RFS Motion and

27  otherwise be successful in any continued litigation, the

28  resolution of the dispute between the Debtor and the Lender has

1   the potential for protracted litigation.   Furthermore, given

2   that the Aircraft is the Debtor's primary asset, even the remote

3   chance that the Lender would be able to repossess the Aircraft

4   leaving zero recovery available for any other creditors and no

5   chance for Debtor to proceed with any reorganization creates a

6   significant risk.   Given the gravity of this risk, the Debtor

7   believes that a consensually negotiated outcome is in the best

8   interests of the Debtor's estate and creditors.

9   **B.**   **The Difficulties in Collection.**

10          The Debtor does not believe that it would be difficult,

11   from a financial standpoint, to collect any judgment obtained in

12   the  Adversary  Proceeding  against  the  Lender.    However,  the

13   Lender would undoubtedly assert every legal basis available to

14   delay the Debtor's ability to collect such judgment.   The Lender

15   would, in all likelihood, pursue all appellate remedies, thereby

16   further delaying any ultimate collection.

17   **C.**   **The Complexity of the Litigation Involved and the Attendant**

18          **Expense, Inconvenience and Delay.**

19          Any  further  litigation  involving  the  RFS  Motion,  the

20   District  Court  Action,  and  the  Adversary  Proceeding  would

21   necessarily require a large expenditure of both time and money.

22   As  illustrated  by  the  history  of  the  parties,  it  is  apparent

23   that, without the Settlement Agreement, the Lender will continue

24   to vigorously prosecute the RFS Motion and the District Court

25   Action. Furthermore, even were the Debtor to successfully defeat

26   the RFS Motion, the Debtor would still need to get its plan of

27   reorganization confirmed. Without the resolution proposed by

28   this Motion, there would likely be even more litigation through

1  a contested plan confirmation process. Thus, the complexity,

2  expense and inconvenience of continuing to litigate are entirely

3  resolved by the Settlement Agreement.

4  **D.    The Interests of Creditors**.

5      The Settlement Agreement represents a consensual resolution

6  of ongoing disputes between the Lender and the Debtor over the

7  primary asset of the Debtor's estate, the Aircraft. Approval of

8  this Motion and the Settlement Agreement will save further

9  litigation expense for the estate. Furthermore, the settlement

10  amount contemplated in the Settlement Agreement reflects a

11  significant reduction in the amount of the Lender's claim,

12  thereby providing the opportunity for greater recovery for the

13  rest of the Debtor's creditors.

14      In consideration of the foregoing, the Debtor, in an

15  exercise of its business judgment, believes that the terms of

16  the settlement under the Settlement Agreement are fair,

17  reasonable, and in the best interests of the Debtor and its

18  creditors.

19      **WHEREFORE**, the Debtor respectfully requests that the Court

20  enter an order:

21      (1)  affirming the adequacy of notice given;

22      (2)  granting the Motion in its entirety;

23      (3)  approving the compromise set forth in the Settlement

24  Agreement;

25      (4)  authorizing the Debtor and the Lender to take all

26  actions necessary to effectuate the terms of the Settlement

27  Agreement; and

28

14

1     (5)  affording  such  further  and  other  relief  as  is

2  appropriate under the circumstances.

3  Dated: April 26, 2011          KRYSTAL AIR, LLC

4

5                                            By:  */s/ Ron Bender*
                                    RON BENDER
6                                   GWENDOLEN D. LONG
                                    LEVENE, NEALE, BENDER, YOO
7                                   & BRILL L.L.P.
                                    Attorneys for Chapter 11
8                                   Debtor and Debtor in
                                    Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF EDWARD P. GRECH

I, EDWARD P. GRECH, HEREBY DECLARE AS FOLLOWS:

1.    I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.    I am the founder and person in control of Krystal Air, LLC, a California limited liability company, the debtor and debtor-in-possession in the above-captioned Chapter 11 proceedings (the "Debtor"), and am responsible for overseeing the day-to-day financial operations and financial performance of the Debtor.   Consequently, I am involved in supervising all material aspects of the Debtor's financial affairs.

3.    I make this Declaration in support of the Motion to which this Declaration is attached.   Unless otherwise stated, all capitalized terms herein have the same meanings as in the Motion.

4.    The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on November 3, 2010 (the "Petition Date").   The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession.

5.    The Debtor is a California limited liability company founded in 1998 and headquartered in Brea, California.   The Debtor provides luxury charter jet services to corporate

16

executives, entertainment personalities, and other travelers seeking first-class private transportation. The Debtor owns and operates a Gulfstream G-IV, Registration No. N914EG (the "Aircraft"), capable of transporting up to thirteen passengers and offers top of the line amenities and conference space.

6.    In March, 2007, the Debtor purchased the Aircraft with financing provided by the Lender. In connection with such financing, the Debtor executed a promissory note in the face amount of $14,300,000 (the "Secured Note") and an Aircraft Security Agreement granting the Lender a security interest in the Aircraft.

7.    A dispute regarding the repayment of the Secured Note eventually led to the Debtor filing for protection under Chapter 11 of the Bankruptcy Code in order to continue operating the Aircraft in an effective and cost-efficient manner, to preserve and maximize the value of the Aircraft for the benefit of all creditors, and to confirm a plan of reorganization and successfully emerge from bankruptcy.

8.    The dispute continued into this Chapter 11 case, with, among other things, the Lender filing its motion for relief from stay as well as instituting an action against me, individually, in the United States District Court on account of my personal guaranty of the Secured Note.

9.   In order to resolve these various, ongoing disputes between the Debtor, the Lender and myself, the parties have entered into the proposed Settlement Agreement (the "Settlement Agreement"), a true and correct copy of which is attached hereto as Exhibit "1."

10.   In an exercise of my business judgment, based on the costs and risks of continuing litigation, as well as the benefit to all creditors from the resolution of the Lender's claim at a significant reduction, I believe that the terms of the settlement under the Settlement Agreement are fair, reasonable, and in the best interests of the Debtor and its creditors.

11.   A proposed form of the order granting the Motion is attached as Exhibit "2" hereto.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on this 26th day of April, 2011, at Brea, California.

/s/ Edward P. Grech
EDWARD P. GRECH, Declarant

# EXHIBIT 1

**EXHIBIT 1**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of May ___, 2011 (the "Effective Date") by and between VFS FINANCING, INC. ("VFS"), a Delaware corporation, PNC BANK, NATIONAL ASSOCIATION, a national banking association, PNC FINANCIAL SERVICES GROUP INC., a Delaware corporation, PNC EQUIPMENT FINANCE, LLC, a Delaware limited liability company, successor by merger to PNCEF, LLC (formerly known as National City Commercial Capital Company, LLC) (collectively, "PNC"), GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation, (named erroneously in the adversary complaint as "General Electric Capital Corporation d/b/a General Electric Capital Solutions, d/b/a Commercial Finance d/ba GE Commercial Finance Commercial Equipment Financing") ("GECC", and collectively, with VFS and PNC, the "Lender Parties"), on the one hand, and KRYSTAL AIR, LLC, a California limited liability company ("Borrower"), and EDWARD P. GRECH ("Grech"), an individual resident of the State of California, both individually and in his capacity as Trustee of the Grech Family Trust, dated July 26, 1994 (the "Trust" and together with Grech and Borrower, "Obligors"), on the other hand, with reference to the following facts:

## I.     RECITALS

### A.     The Obligations.

1.     The Note. Borrower executed and delivered to VFS that certain Promissory Note dated March 1, 2007, under the terms of which Borrower agreed to pay to VFS the principal sum of $14,300,000, together with interest thereon (the "Note"), in accordance with the terms and conditions set forth in the Note.

2.     The Guaranties. On or about March 1, 2007, Grech made, executed and delivered to VFS: (a) that certain Individual Guaranty dated March 1, 2007 in favor of VFS (the "Individual Guaranty"), and (b) that certain Trust Guaranty dated March 1, 2007 in favor of VFS (the "Trust Guaranty," and together with the Individual Guaranty, the "Guaranties"). Pursuant to the Guaranties, Grech and the Trust (the "Guarantors"), among other things, unconditionally and absolutely guaranteed the prompt and punctual payment and performance by Borrower of its obligations under the Note.

### B.     The Collateral.

1.     Aircraft Security Agreement. To secure the obligations under the Note, VFS, through GECC as its attorney in fact, and Borrower entered into that certain Aircraft Security Agreement dated March 1, 2007 in favor of VFS, which was recorded with the Federal Aviation Administration ("FAA"), on April 5, 2007, as Conveyance No. R068922 (the "Security Agreement"). The Security Agreement encumbers, among other things in accordance with the terms and conditions set forth in the Security Agreement: a Gulfstream Aerospace model G-IV (shown on the International Registry ("IR") as GULFSTREAM model Gulfstream G-IV (GIV)) aircraft bearing manufacturer's serial number 1174 and U.S. Registration No. N10ZK (and later changed to N914EG), and two (2) Rolls Royce model TAY MK611-8 (shown on the IR as ROLLS ROYCE model TAY611) aircraft engines bearing manufacturer's serial numbers 16451 and 16452 (collectively, the "Collateral"). VFS's security interest in the Collateral was also registered with the IR on March 1, 2007 under file numbers 73839, 73841 and 73843. With

1

respect to the Collateral, Borrower also executed and delivered to and in favor of VFS an Irrevocable De-Registration and Export Request Authorization dated March 1, 2007.

2. Perfection of UCC Security Interests. VFS contends that it perfected its security interest in the Collateral when the Security Agreement was recorded with the FAA as set forth above and UCC Financing Statements describing the Collateral were filed with the California Secretary of State on March 1, 2007, as Filing Nos. 07-7104649422 and 07-7104649664.

**C. Status of the Obligations.**

1. The Bankruptcy Proceeding. On November 3, 2010, Borrower filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, docketed as *In re Krystal Air, LLC* (Case No. 1:10-bk-23983-MT) (the "Bankruptcy Proceeding").

2. The Adversary Proceeding. On November 19, 2010, Obligors filed Adversary Case No. 1:10-ap-01503-MT DOC MLGX against VFS, PNC and GECC (named erroneously in the adversary complaint as "General Electric Capital Corporation d/b/a General Electric Capital Solutions, d/b/a GE Commercial Finance d/ba GE Commercial Finance Commercial Equipment Financing") (in the United States Bankruptcy Court for the Central District of California, docketed as *Krystal Air, LLC et al. v. General Electric Capital Corporation et al.* (the "Adversary Proceeding").

3. The Guarantor Action. On January 4, 2011, VFS filed Case No. SACv11-0011 against the Guarantors in the United States District Court for the Central District of California, docketed as *VFS Financing, Inc. v. Edward P. Grech* (the "Guarantor Action"), in which VFS sought, among other things, to enforce the obligations of the Guarantors under the Guaranties.

4. The Obligations. As of March 15, 2011, VFS contends that the total amount due under the Note was $13,560,018.68 consisting of the principal balance of $12,895,000 and accrued and unpaid interest of $665,018.68, plus the make whole amount, costs, expenses, attorneys' fees, and other charges as provided in the Note, the Guaranties, and the other Loan Documents (the "Obligations").

**D. The Settlement.** The Obligors and the Lender Parties have agreed to settle the Adversary Proceeding and the Guarantor Action, the Obligations of the Obligors to VFS evidenced by the Note and the other Loan Documents (defined below), and all other claims or causes of action arising from or related to the Note, the Security Agreement and the Guaranties, for payment to the Lender Parties in the total sum of Twelve Million and 00/100 U.S. Dollars ($12,000,000.00) (the "Settlement Amount"), plus the Adequate Protection Payments as set forth in paragraph 4 below, on the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Lender Parties, Borrower and the Obligors agree as follows:

## II.   COVENANTS, PROMISES, AND OBLIGATIONS

1. Definitions. Capitalized terms not otherwise defined herein shall have the meaning set forth in the Security Agreement. The Note, the Security Agreement, the Guaranties,

2

and the other Operative Documents, as the same may have been previously amended, are herein collectively referred to as the "Loan Documents".

2. Recitals. Recitals A through D, inclusive, are incorporated herein by reference as though set forth in full herein.

3. Up-Front Payments. Within forty-eight hours following the execution of this Agreement (the "First Up-Front Payment Date"), the Guarantors shall cause to be paid to the Lender Parties $695,000 in cash ("the First Up-Front Payment"). On or before May 4, 2011 (the "Second Up-Front Payment Date"), the Guarantors shall cause to be paid to the Lender Parties $1.7 million in cash (the "Second Up-Front Payment", and together with the $105,000 "adequate protection" payment made by Obligors to the Lender Parties on or about February 15, 2011, and the First Up-Front Payment, the "Up-Front Payment") by wire transfers of immediately available funds pursuant to wire instructions set forth below:

| Bank Name: | Deutsche Trust Company Americas |
|---|---|
| Bank Address: | 60 Wall Street |
| Bank City, State, Country | New York, NY 10005 |
| Routing Number: | ABA No. 021-001-033 |
| Account Number: | A/C No. 502 56 653 |
| Beneficiary Name: | GECC/VFS Wire Receipts PA Region |
| Reference #1: | Wire Comment: 3701429001 |
| Reference #2 | ATTN: Lynne McAlley |
| Swift Code | |

Time shall be of the essence with respect to the First Up-Front Payment Date and the Second Up-Front Payment Date.

4. The Adequate Protection Payments. On each of April 30, 2011, May 31, 2011, June 30, 2011, and July 31, 2011, Obligors shall pay to the Lender Parties the sum of $50,000 as and for adequate protection payments in connection with the Bankruptcy Proceeding (the "Adequate Protection Payments"). In the event the Release Payment (as defined hereafter) is made prior to July 31, 2011, then (a) the Adequate Protection Payment for the month in which the Release Payment is made shall be pro-rated for number of days actually elapsed between the first day of the month and the date of the making of the Release Payment, and (b) no Adequate Protection Payments shall be due for any period after the making of the Release Payment. Payments made pursuant to this Section 4 shall not be credited against the Settlement Amount.

5. Release Payment.

a. On or before July 31, 2011 (the "Release Payment Date"), the Guarantors shall cause to be paid to the Lender Parties the sum of $9.5 million (the "Release Payment"). The Release Payment shall be paid from an escrow by wire transfer of immediately available funds pursuant to the wire instructions set forth above.

3

b. Obligors shall contemporaneously with the transfer of the Release Payment advise the Lender Parties, via email or telephone, that the Release Payment was wired to the Lender Parties.

c. Upon the occurrence of an Event of Default (defined below) under this Agreement, the Lender Parties accept any received portion of the Up-Front Payment in partial satisfaction of the Obligations, and only as a payment on account of the Obligations, and without expressly or impliedly waiving any potential defenses to the Guarantor Action as specified in Section 7, infra, the Obligors will continue to be obligated to pay the Lender Parties the full amount of the Obligations, in accordance with the terms of the Loan Documents, less any amount actually paid on account of the Obligations and received by the Lender Parties.

d. Upon the Lender Parties' receipt of the Settlement Amount on or before the Release Payment Date, VFS shall promptly record releases (the "Security Releases") of the Security Agreement with respect to the Collateral with the Federal Aviation Administration and the International Registry, if applicable, as soon as practical and make such other filings as are deemed necessary by the Borrower or the Obligors to evidence the release of its security interest in the Collateral. Upon receipt of the Settlement Amount, the Note and the Guaranties shall be deemed satisfied, cancelled, released and/or terminated, even though the recordation of the Security Releases may occur on a date thereafter, and all Obligations in excess of the Settlement Amount shall be deemed permanently waived.

e. Time shall be of the essence with respect to the Release Payment Date.

6. The Adversary Proceeding. Upon execution of this Agreement, Obligors shall dismiss the Adversary Proceeding with prejudice.

7. The Guarantor Action. Concurrently with the execution of this Agreement, VFS and the Guarantors shall execute, and VFS's undersigned counsel will promptly file, a stipulation to stay the Guarantor Action, in the form attached hereto as Exhibit "1." Upon an Event of Default (defined below), the stay of the Guarantor Action shall be terminated. Upon the occurrence of an Event of Default, Obligors agree that they shall not contend in the Bankruptcy Proceeding, the Guarantor Action, the Adversary Proceeding, or otherwise, that the Obligations have been compromised or that their maximum liability is limited to the Settlement Amount. Obligors acknowledge that in the Event of Default hereunder, and subject to the right of the Guarantors to assert any defenses to any claims against them in the Guarantor Action, the Lender Parties will be entitled to seek to recover all sums due and owing to the Lender Parties including but not limited to principal, interest, reasonable attorneys' fees and other fees, costs and expenses recoverable under the Loan Documents, and that such recovery shall not be limited to the Settlement Amount. Upon the Lender Parties' receipt of the Settlement Amount on or before the Release Payment Date, VFS shall promptly dismiss the Guarantor Action with prejudice.

8. The Bankruptcy; Relief From Stay. Concurrently with the execution of this Agreement, Borrower shall stipulate to reset the hearing on VFS's motion for relief from the automatic stay in the Bankruptcy Proceeding and shall conditionally stipulate to relief from the

4

automatic stay under conditions specified below by executing and delivering, and causing their respective undersigned counsel to execute and deliver, to the Lender Parties' undersigned counsel the Stipulation to Reset Hearing on Motion for Relief from the Automatic Stay and Stipulation for Relief from Stay in the form attached hereto as Exhibit "2" (the "Stipulation Regarding Relief from Stay").

9.      Conditions Precedent to Filing Stipulation for Relief from Automatic Stay. Upon the occurrence of an Event of Default relating to the appropriate maintenance of the Collateral or insurance for the Collateral which is not timely cured following notice of the Event of Default being provided by the Lender Parties to Borrower and its counsel, Obligors agree that VFS may file the Stipulation Regarding Relief from Stay immediately with the Bankruptcy Court and seek to have a hearing thereon upon 24 hours' notice. If the Event of Default consists of the failure to timely pay any portion of the Settlement Amount or of the Adequate Protection Payments required to be paid hereunder, VFS may file the Stipulation Regarding Relief from Stay as set forth therein, and Borrower shall retain the right to oppose VFS's effort to obtain relief from stay and its right to seek confirmation of its Plan of Reorganization. If the Event of Default consists of the failure to appropriately maintain the Collateral or insurance for the Collateral, VFS shall be entitled to immediate relief from stay unless Borrower establishes to the Bankruptcy Court's satisfaction that no such Event of Default has occurred or is continuing. If the First Up-Front Payment has been timely made, the parties agree that at the hearings currently scheduled for April 26, 2011 in the Bankruptcy Proceeding, they shall jointly request that the Court continue the hearing on VFS's pending Motion for Relief from the Automatic Stay to the first date available on the Court's calendar after May 4, 2011. If the Second Up-Front Payment thereafter has been timely made, the Parties agree that they shall jointly request that the Court continue the hearing on VFS' pending motion for relief from the automatic stay to the first date available on the Court's calendar after July 31, 2011. Upon the Lender Parties' receipt of the Settlement Amount on or before the Release Payment Date, the Lender Parties shall promptly return the Stipulation for Relief from Stay to Borrower's undersigned counsel.

10.     Events of Default. Each of the following shall be considered an "Event of Default" under this Agreement:

  a. A failure of the Obligors to timely deliver the First Up-Front Payment, the Second Up-Front Payment, any required Adequate Protection Payment, or the Release Payment.
  b. A failure of the Borrower to insure or maintain the Collateral as required under the Loan Documents, which failure is not cured within three business days following the giving of notice thereof to counsel for Borrower.
  c. A failure of the Obligors to satisfy the Conditions Precedent, as defined in Section 11, infra, by May 6, 2011.

11.     Conditions Precedent. The effectiveness of this Agreement, and the Lender Parties obligations hereunder, are conditioned upon the fulfillment by the Obligors of all of the conditions precedent set forth below in this paragraph 11 (the "Conditions Precedent"); provided, however, that notwithstanding the failure of any condition precedent to occur or be satisfied, the

5

Lender Parties shall be entitled to retain all or any portion of the Settlement Amount received by them:

    a.    Bankruptcy Court Approval of this Agreement and Conditional Dismissal of the Bankruptcy Proceeding. The Borrower shall file, and the Court must grant, a motion in the Bankruptcy Proceeding under Federal Rules of Bankruptcy Procedure Rule 9019 for Court approval of this Agreement (the "9019 Motion"). In the event that the Guarantors fail to timely make the First Up-Front Payment or the Second Up-Front Payment or any required Adequate Protection Payment, the 9019 Motion cannot be withdrawn. As part of the 9019 Motion, the Borrower will be requesting the Bankruptcy Court to approve a conditional dismissal of the Bankruptcy Proceeding, with the only remaining condition to the entry by the Bankruptcy Court of an order dismissing the Bankruptcy Proceeding being the submission to the Bankruptcy Court of evidence that the First Up-Front Payment, the Second Up-Front Payment, any required Adequate Protection Payments and the Release Payment all having been timely made. The Lender Parties will file a pleading with the Bankruptcy Court supporting Bankruptcy Court approval of the 9109 Motion, including the conditional dismissal of the Bankruptcy Proceeding in accordance with the terms set forth herein.

    b.    Delivery of Documents. The Obligors shall deliver, or shall cause to be delivered, to the Lender Parties the following documents or things, in form and substance satisfactory to the Lender Parties and their counsel, and if such documents require signatures, then executed by the appropriate parties:

        (i)        this Agreement and other documents set forth herein; and

        (ii)       limited liability company or corporate authority documents, as applicable, for the Obligors, authorizing them to enter into this Agreement and any other agreement executed in connection herewith.

    c.    Source of Funds for the Settlement Amount. The source of funds for the Settlement Amount do not violate or conflict with any federal or state "anti-money laundering" statutes, rules, regulations, ordinances or orders, including without limitation, Executive Order No. 13224 on Terrorist Financing, effective Sept. 24, 2011 and the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001. Public Law 107-56, or any other state or federal statute, rule, regulation, ordinance or order applicable to Lender or any of its affiliates.

## III. RELEASES

    12.    Release of VFS, PNC and GECC by the Obligors. Except with respect to the covenants, promises, and obligations of VFS, PNC and GECC arising hereunder, for good and valuable consideration, receipt of which is hereby acknowledged, the Obligors each hereby release and forever discharge each of VFS, PNC and GECC and its employees, agents, representatives, insurers, attorneys, predecessors, successors, officers, directors, subsidiaries, affiliates, related entities, divisions, and assigns (collectively, the "Lender

Releasees") of and from any and all claims, debts, liabilities, demands, obligations, costs, expenses, actions and causes of action, of every nature, character and description, known and unknown, which the Obligors, or any one or more of them, now owns or holds, or has at any time heretofore owned or held, or may at any time own or hold, against the Lender Releasees or any one or more of them, whether based on contract, tort, statutory or other legal or equitable theory of relief, in any way arising out of, connected to, or related to the Note, Loan Documents, Guaranties, the Collateral, the Bankruptcy Proceeding, the Adversary Proceeding, the Guarantor Action or the Obligations; provided, however, that the releases contained herein shall not limit the rights of (i) Borrower to object to VFS's Motion for Relief from the Automatic Stay, or to seek confirmation of its Plan of Reorganization, or (ii) the Guarantors to assert any and all defenses to VFS's claims against them in the Guarantor Action. Notwithstanding the foregoing proviso, under no circumstances shall Borrower or the Guarantors be entitled to recover any affirmative relief against the Lender Parties in the Bankruptcy Proceeding, the Adversary Proceeding, the Guarantor Action, or otherwise.

13.     Conditional Release of the Borrower and the Obligors by the Lender Parties. In the event that the Lender Parties receive the Settlement Amount on or before the Release Payment Date, then effective upon such occurrence, and except with respect to the covenants, promises, and obligations of the Obligors arising hereunder, for good and valuable consideration, receipt of which is hereby acknowledged, the Lender Parties hereby release and forever discharge the Borrower and the Obligors and their employees, agents, representatives, insurers, attorneys, predecessors, successors, and assigns (collectively, the "Obligor Releasees") of and from any and all claims, debts, liabilities, demands, obligations, costs, expenses, actions and causes of action, of every nature, character and description, known and unknown, which the Lender Parties or any of them now own or hold, or have at any time heretofore owned or held, or may at any time own or hold, against the Obligor Releasees or any one or more of them, whether based on contract, tort, statutory or other legal or equitable theory of relief, in any way arising out of, connected to, or related to the Note, the Loan, Loan Documents, Guaranties, the Collateral or the Obligations; provided, however, that in the event that (a) any payment made to or consideration received by the Lender Parties regarding the Obligations is thereafter rescinded, reduced or otherwise restored or returned to the Obligors based on a court order or otherwise, or (b) any other event or occurrence arises that would materially impair the ability of the Lender Parties to realize on the full amount of the Settlement Amount, including but not limited to the filing of any action to recover any of the payments made under this Agreement, then (i) if the Loan Documents or Guaranties have previously been terminated and the Obligors released from his, her or its obligations thereunder, at such time the Loan Documents and Guaranties shall be deemed revived and in full force and effect to the extent of any economic prejudice suffered by the Lender Parties, (ii) if the Guarantor Action has been dismissed with prejudice under paragraph 6 above, the Obligor Parties agree that the dismissal of the Guarantor Action may be vacated and such action reinstated to the extent of any economic prejudice suffered by the Lender Parties, and (iii) the conditional release of the Obligor Releasees provided for herein shall be null and void for all purposes to the extent of any economic prejudice suffered by the Lender Parties.

14.     Unknown Claims; Waiver of Civil Code Section 1542. With respect to the releases provided for herein, each of the parties thereto waives and relinquishes all rights and

7

benefits afforded by Section 1542 of the Civil Code of the State of California. The parties understand that the facts in respect of which the releases made in this Agreement are given may hereafter turn out to be other than or different from the facts in that connection now known or believed by such parties to be true, and hereby accept and assume the risk of such facts turning out to be different and agree that this Agreement shall be and remain in all respects effective and not subject to termination or rescission for any reason including, but not limited to, any such difference in facts.

Section 1542 of the Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

## IV. GENERAL PROVISIONS

15.     No Assignment of Claims. The parties hereto each represent and warrant to one another that they have not assigned to any person or entity not a signatory to this Agreement any claim, debt, liability, demand, obligation, cost, expense, action, or cause of action released hereunder (collectively, "Claim"). In the event that contrary to the foregoing representation and warranty any party has heretofore assigned, or purported to have assigned, any Claim released hereunder, such party agrees to indemnify and hold harmless all parties in whose favor such release runs hereunder and to satisfy any such Claim, including actual expenses of investigation, attorneys' fees and costs.

16.     Authority to Enter into and Execute this Agreement. All the individuals executing this Agreement on behalf of parties to this Agreement represent and warrant that they have the consent and authority of such parties to enter into and execute this Agreement on behalf of such parties. In the event that contrary to the foregoing representation and warranty any individual is not so authorized, such individual agrees to indemnify the party or parties in whose favor the foregoing representations and warranties were made for any damages suffered by all parties in whose favor such representations and warranties were made as a result of such representations and warranties.

17.     Representation by Counsel. Each party to this Agreement acknowledges that (a) such party has had the opportunity to be represented by independent legal counsel of such party's own choice throughout all of the negotiations which preceded the execution of this Agreement, and retained such counsel, (b) such party has executed this Agreement with the consent and on the advice of such independent legal counsel, (c) such party and such party's counsel have had an adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matter of this Agreement prior to the execution hereof and the delivery and acceptance of the consideration specified herein, and (d) such party has executed this Agreement voluntarily, knowingly, and without coercion.

8

18.    <u>Binding on Successors</u>.  This Agreement shall be binding upon the parties and their respective heirs, representatives, successors and assigns.  All of the covenants and agreements herein contained in favor of the parties are for the express benefit of each and all of them.

19.    <u>Non-Assignability</u>.  Neither this Agreement nor any rights or obligations hereunder shall be assigned or transferred by any party, in whole or in part, by operation of law or otherwise, without the prior written consent of the other parties.  Any attempted assignment without such consent shall be void.

20.    <u>No Third-Party Beneficiaries</u>.  This Agreement does not create, and shall not be construed as creating, any rights enforceable by any person not a party to this Agreement.

21.    <u>Attorneys' Fees</u>.  Should any action be brought in connection with the enforcement or interpretation of, by reason of any claim, default or breach of, or in any way relating to, this Agreement or the settlement contained herein, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs incurred in connection with such action.

22.    <u>Other Documents</u>.  The parties to this Agreement agree to execute any agreements or other documents that are required by the Loan Documents, whether before or after payment of the Settlement Amount (including without limitation: the Note, the Guaranties, and/or other documents related to the Borrower and Obligors' obligations arising under the Loan Documents), and any and all documents necessary or reasonably requested by Lender Parties or Obligors in order to effectuate the terms, conditions, purposes and objectives of this Agreement, including but not limited to the documents referenced in paragraphs 7 and 8 above and attached as exhibits hereto, the escrow account that will pay the Release Payment, warranty transfer documents, insurance documents, any and all documents required to convey or re-convey the Federal Aviation Administration (FAA) security agreement, and any documents necessary to transfer the Aircraft's International Registry.

23.    <u>Severability</u>.  Should any part, term or provision of this Agreement be declared or determined by any court to be illegal or invalid, such part, term or provision shall be deemed not to be a part of this Agreement and the remainder of the Agreement shall remain valid and enforceable.

24.    <u>Integration/Entire Agreement</u>.  This Agreement and the documents, instruments and/or agreements referred to herein, set forth the entire agreement between the parties with regard to the subject matter hereof.  All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties with regard to the subject matter hereof are contained herein and in the documents, instruments and agreements referred to herein, or implementing the provisions hereof.  No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party to another with respect to the subject matter of this Agreement.  All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants, and warranties with respect to the subject matter hereof are

9

waived, merged herein and therein and superseded hereby and thereby. This is an integrated agreement. Each of the parties hereto acknowledges that any party or agent or attorney of any other party has not made any promise, representation or warranty whatsoever, express or implied, written or oral, not contained herein concerning the subject matter hereof to induce it to execute this Agreement and each of the parties acknowledges that it has not executed this Agreement in reliance on any promises, representation or warranty not contained herein.

25.    Amendment. No modification, amendment or waiver of any of the provisions of this Agreement shall be effective unless in writing signed by all the parties hereto.

26.    Waiver. The failure to enforce at any time any of the provisions of this Agreement or to require at any time performance by another party of any of the provisions hereof shall in no way be construed to be a waiver of said provision or to affect either validity of this Agreement, or any part hereof, or the right of any party thereafter to enforce each and every such provision in accordance with the terms of this Agreement. Any waiver of any condition in, or breach of, this Agreement in a particular instance, shall not operate as a waiver of other or subsequent conditions or breaches of the same or a different kind. The parties' exercise or failure to exercise any rights under this Agreement in a particular instance shall not operate as a waiver of their right to exercise the same or different rights in subsequent instances.

27.    Captions. The captions of the various paragraphs herein are for convenience only, and none of them is intended to be any part of the body or text of this Agreement nor is intended to be referred to in construing any of the provisions hereof.

28.    Interpretation. This Agreement has been prepared and negotiations in connection therewith have been carried on by the joint efforts of the parties. This Agreement is to be construed fairly and not strictly for or against any of the parties hereto.

29.    Counterparts. This Agreement may be executed in any number of counterparts, any of which shall be deemed to be the original. Signatures by facsimile shall be effective as originals.

30.    No Novation. This Agreement shall not constitute a novation of the Loan Documents or the Guaranties, each of which remains in effect in accordance with its terms as such terms may be modified herein (as applicable) or in the documents referenced herein and being executed concurrently herewith.

31.    Choice of Law and Venue. Any and all disputes arising with respect to this Agreement shall be determined in accordance with the laws of the State of California. The sole venue for any such disputes shall be the California Superior Court or the United States District Court for the Central District of California.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the Effective Date and their attorneys have indicated their approval as to form by their respective signatures in the appropriate spaces below.

[Remainder of page intentionally left blank; signature page immediately follows]

10

DATED: April __, 2011                    VFS FINANCING, INC.

                                         By:_____
                                         Title:_____

DATED: April 26 2011                     PNC BANK, NATIONAL ASSOCIATION

                                         By:_____
                                         Title:_____Vice President_____

DATED: April 26 2011                     PNC FINANCIAL SERVICES GROUP,
                                         INC.

                                         By:_____
                                         Title:_____Vice President_____

DATED: April 26 2011                     PNC EQUIPMENT FINANCE, LLC

                                         By:_____
                                         Title:_____Vice President_____

DATED: April __, 2011                    GENERAL ELECTRIC CAPITAL
                                         CORPORATION

                                         By:_____
                                         Title:_____

DATED: April __, 2011                    KRYSTAL AIR, LLC

                                         By:_____
                                         Title:_____

DATED: April 25, 2011

VFS FINANCING, INC.

By: _Eric Strutz_
Title: VP Global Restructuring Solutions

DATED: April __, 2011

PNC BANK, NATIONAL ASSOCIATION

By:_____
Title:_____

DATED: April __, 2011

PNC FINANCIAL SERVICES GROUP, INC.

By:_____
Title:_____

DATED: April __, 2011

PNC EQUIPMENT FINANCE, LLC

By:_____
Title:_____

DATED: April 22 2011

GENERAL ELECTRIC CAPITAL CORPORATION

By: _Eric Strutz_
Title: VP Global Restructuring Solutions

DATED: April __, 2011

KRYSTAL AIR, LLC

By:_____
Title:_____

DATED: March __, 2011    VFS FINANCING, INC.

        By: _____
        Title: _____

DATED: March __, 2011    PNC BANK, NATIONAL ASSOCIATION

        By: _____
        Title: _____

DATED: March __, 2011    PNC FINANCIAL SERVICES GROUP, INC.

        By: _____
        Title: _____

DATED: March __, 2011    PNC EQUIPMENT FINANCE, LLC

        By: _____
        Title: _____

DATED: March __, 2011    GENERAL ELECTRIC CAPITAL
        CORPORATION

        By: _____
        Title: _____

DATED: March April 26, 2011    KRYSTAL AIR, LLC

        By: _____
        Title: _____

12

DATED: March 26, 2011

DATED: March 26, 2011

EDWARD P. GRECH

GRECH FAMILY TRUST, DATED JULY 26, 1994

By: _____
EDWARD P. GRECH, TRUSTEE

## Approved as to Form:

LEVENE, NEALE, BENDER, YOO & BRILL
L.L.P.

By: _____
RON BENDER
Attorneys for KRYSTAL AIR, LLC

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations

By: _____
LEO D. PLOTKIN
Attorneys for VFS FINANCING, INC., PNC BANK
NATIONAL ASSOCIATION, PNC FINANCIAL
SERVICES GROUP, INC. AND PNC
EQUIPMENT FINANCE, LLC

LAW OFFICES OF MICHEL F. MILLS, P.C.

By: _____
MICHEL MILLS
Attorneys for EDWARD P. GRECH AND THE
GRECH FAMILY TRUST, DATED JULY 26, 1994

REED SMITH, LLP

By: _____
MARILYN MOBERG
Attorneys for VFS FINANCING, INC. AND
GENERAL ELECTRIC CAPITAL
CORPORATION

26672-1

13



DATED: April __, 2011

_____
EDWARD P. GRECH

DATED: April __, 2011

GRECH FAMILY TRUST, DATED JULY 26, 1994

By: _____
EDWARD P. GRECH, TRUSTEE

## Approved as to Form:

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

LAW OFFICES OF MICHEL F. MILLS, P.C.

By: _____

By: _____
MICHEL MILLS
Attorneys for EDWARD P. GRECH AND THE
GRECH FAMILY TRUST, DATED JULY 26, 1994

By: _____
RON BENDER
Attorneys for KRYSTAL AIR, LLC

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations

By: _Leo Plotkin /EHG_____
LEO D. PLOTKIN
Attorneys for VFS FINANCING, INC., PNC BANK
NATIONAL ASSOCIATION, PNC FINANCIAL
SERVICES GROUP, INC. AND PNC
EQUIPMENT FINANCE, LLC

REED SMITH, LLP

By: _____ 4/25/011
MARILYN MOBERG
Attorneys for VFS FINANCING, INC. AND
GENERAL ELECTRIC CAPITAL
CORPORATION

GE Settlement Agreement v2 (revised)

12

DATED: April __, 2011

_____
EDWARD P. GRECH

DATED: April __, 2011

GRECH FAMILY TRUST, DATED JULY 26, 1994

By: _____
EDWARD P. GRECH, TRUSTEE

## Approved as to Form:

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

By: _____
RON BENDER
Attorneys for KRYSTAL AIR, LLC

LAW OFFICES OF MICHEL R. MILLS, P.C.

By: _____
MICHEL MILLS
Attorney for EDWARD P. GRECH AND THE GRECH FAMILY TRUST, DATED JULY 26, 1994

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations

By: _____
LEO D. PLOTKIN
Attorneys for VFS FINANCING, INC., PNC BANK NATIONAL ASSOCIATION, PNC FINANCIAL SERVICES GROUP, INC. AND PNC EQUIPMENT FINANCE, LLC

REED SMITH, LLP

By: _____
MARILYN MOBERG
Attorneys for VFS FINANCING, INC. AND GENERAL ELECTRIC CAPITAL CORPORATION

GE Settlement Agreement v2 (revised)

# EXHIBIT 2

**EXHIBIT 2**

1  RON BENDER (SBN 143364)
   GWENDOLEN D. LONG (CA admission pending)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234
   Facsimile:  (310) 229-1244
5  Email:  rb@lnbyb.com, gdl@lnbyb.com

6  Attorneys for Chapter 11 Debtor
   And Debtor in Possession
7

8                 UNITED STATES BANKRUPTCY COURT
9                 CENTRAL DISTRICT OF CALIFORNIA
                  (SAN FERNANDO VALLEY DIVISION)
10

11  In re:                        ) Case No. 1:10-bk-23983-MT
12                                 )
    KRYSTAL AIR, LLC,              ) Chapter 11
13                                 )
                 Debtor.           ) ORDER GRANTING DEBTOR'S MOTION
14                                 ) TO   APPROVE   STIPULATION   AND
                                   ) SETTLEMENT
15                                 )
16                                 )
                                   )
17                                 )
                                   )
18  _____)

19

20      The Court having considered the Debtor's Motion to Approve

21  Stipulation  and  Settlement  (the  "Motion")  and  having  found

22  notice to be sufficient and appropriate under the circumstances,

23  IT IS HEREBY ORDERED AS FOLLOWS:

24      (1)   the Motion is hereby GRANTED in its entirety;

25      (2)   the  Settlement  Agreement  is  APPROVED  pursuant  to

26  Fed.R.Bankr.P. 9019(a);

27

28

                                 19

1     (3)  the Debtor and all other parties to the Settlement

2 Agreement are authorized to take all actions necessary to

3 effectuate the terms of the Settlement Agreement; and

4

IT IS SO ORDERED.

5

6                ###

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described as: **DEBTOR'S NOTICE OF MOTION AND MOTION TO APPROVE STIPULATION AND SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF EDWARD P. GRECH IN SUPPORT THEREOF**, will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 26, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Ron Bender   rb@lnbrb.com**
- **Katherine Bunker   kate.bunker@usdoj.gov**
- **Michael Garabed   mgarabed@reedsmith.com, egallagher@reedsmith.com**
- **Eric H Geffner   egeffner@lsl-la.com**
- **Leo D Plotkin   lplotkin@lsl-la.com, dsmall@lsl-la.com**
- **Christopher O Rivas   crivas@reedsmith.com**
- **Thomas E Shuck   malvarado@pmcos.com**
- **United States Trustee (SV)   ustpregion16.wh.ecf@usdoj.gov**

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On **April 26, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*BY OVERNIGHT MAIL*
Hon. Maureen A. Tighe
U. S. Bankruptcy Court
San Fernando Valley Division
21041 Burbank Blvd., Suite 325
Woodland Hills, CA 91367

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 26, 2011 | TRISH MELENDEZ | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
*August 2010*   F 9013-3.1.PROOF.SERVICE

4712

**ALL SERVED BY OVERNIGHT MAIL**

**Krystal Air, LLC**
**4712**
**RSN/SECURED CREDITORS**
**20 LARGEST/ALL CREDITORS**

Krystal Air, LLC
2701 E. Imperial Highway
Brea, CA 92821

U.S. Trustee
21051 Warner Center Lane
Suite 115
Woodland Hills, CA 91367

GE Capital
PO Box 64387
Pittsburgh, PA 15264-3897

Western Jet Aviation
16101 Saticoy Street, 901 Hangar
Van Nuys, CA 91406

Verizon Wireless
15505 Sand Canyon Ave
Irvine, CA 92618

Universal Weather & Aviation, Inc.
8787 Tallyho
Houston, TX 77061

T-Mobile
12920 SE 38th St
Bellevue, WA 98006

Solomon, Winnett & Rosenfield
11777 San Vicente Blvd., #777
Los Angeles, CA 90049

McDermott, Will & Emery
2049 Century Park East
Los Angeles, CA

Lovitt & Touche
7202 E. Rosewood, #200
Tucson, AZ 85710

L.A. County Tax Collector
225 N. Hill Street, #122
Los Angeles, CA 90012

JSSI
180 N. Stetson, Suite 29
Chicago, IL 60601

Jet Edge
16135 Cohasset Street
Van Nuys, CA 91406

Jeppeson
55 Inverness Drive East
Englewood, CO 80112

Honeywell
21111 N. 19th Avenue
Phoenix, AZ 85027

Gulfstream
500 Gulfstream Road
Savannah, GA 31407

Fred Muller, Esq.
15915 Ventura Blvd. #203
Encino, CA 91436

Frandzel, Robins, Bloom & Csato
6500 Wilshire Blvd # 1700
Los Angeles, CA 90048

L.A. County Treasurer & Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110
Attn: Man-Ling Kuo,
Tax Services Clerk I

Corporate Air Parts, Inc.
7641 Densmore Avenue
Van Nuys, CA 91406

Banyan Air Services, Inc.
5360 NW 20th Terrace
Ft. Lauderdale, FL 33309

B of A Business Card
P.O. Box 15184
Wilmington, DE 19850

Aircell Bus. Aviation Services, LLC
Department 1371
Denver, CO 80256

Aerlex Law Group
2800 28th St # 200
Santa Monica, CA 90405

Levy, Small & Lallas
*Counsel to GE Capital*
815 Moraga Drive
Los Angeles, CA 90049
   Attn: Leo D. Plotkin, Esq.

Parker, Milliken, Clark, O'Hara &
Samuelian
Counsel to *Wells Fargo Equip. Finance*
555 S. Flower St., 30th Fl.
Los Angeles, CA 90071-2440
Attn: Thomas E. Shuck, Esq.

Edward Grech
2701 E. Imperial Highway
Brea, CA 92821